1 | SHAUN P. MARTIN, ESQ. (Bar No. 158480)
University of San Diego School of Law
2 | 5998 Alcala Park, Warren Hall
San Diego, CA 92110
3 | (619) 260-2347
FAX: (619) 260-7933
4 | smartin@sandiego.edu

5 | DAVID J. RICHTER, ESQ. (Bar No. 165694)
JOHNNY Y. CHEN, ESQ. (Bar No. 198469)
6 | DivX Networks, Inc.
10350 Science Center Drive, Suite 140
7 | San Diego, CA 92121
(858) 909-5300
8 | FAX: (858) 909-5301

9 | Counsel for Plaintiff

FILED
05 JAN 14 PM 3: 48
CLERK, U.S. DISTRICT
SOUTHERN DISTRICT OF CAL.
By: RRhone
DEPUTY

RECEIVED

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

05 - 240

11 | UNITED STATES DISTRICT COURT FOR THE

12 | SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 14  DIVXNETWORKS, INC., | ) CASE NO. 04 CV 2386 L (BLM) |
| 15             Plaintiff, | ) PLAINTIFF'S MEMORANDUM OF |
| | ) POINTS AND AUTHORITIES IN |
| 16      v. | ) OPPOSITION TO MOTION TO DISMISS, |
| | ) TRANSFER OR STAY |
| 17  ARCHOS, INC. and ARCHOS S.A., | ) |
| | ) Date:  January 31, 2005 |
| 18             Defendants. | ) Time:  10:30 a.m. |
| | ) Ctrm:  14 |

**TABLE OF CONTENTS**

Page

I.     DEFENDANT'S OBJECTION TO JURISDICTION IS MERITLESS. . . . . . . . . .  1

II.    A TRANSFER, DISMISSAL, OR STAY IS UNWARRANTED. . . . . . . . . . . . . . .  2

       A.    Transfer Would Be Improper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

             1.    Archos Has Not Established Jurisdiction and Venue in Delaware. . . .  2

                   (a)    Jurisdiction and Venue Over Archos. . . . . . . . . . . . . . . . . . .  2
                   (b)    Jurisdiction and Venue Over Archos, S.A. . . . . . . . . . . . . . .  3

             2.    Archos Has Not Established That Delaware Is More Convenient. . . .  4

                   (a)    Party Preference: California . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
                   (b)    Where the Claim Arose: California . . . . . . . . . . . . . . . . . . . . .  6
                   (c)    The Convenience of the Parties: California . . . . . . . . . . . . . .  7
                   (d)    The Location of the Witnesses: California . . . . . . . . . . . . . .  8
                   (e)    The Books and Witnesses: California . . . . . . . . . . . . . . . . . .  13
                   (f)    The Enforceability of a Judgment: California . . . . . . . . . . .  14
                   (g)    Practical Considerations: California . . . . . . . . . . . . . . . . . . .  14
                   (h)    Court Congestion: California . . . . . . . . . . . . . . . . . . . . . . . . .  15
                   (i)    Public Policies and Local Interest: California . . . . . . . . . . .  15

       B.    A Stay or Dismissal Is Similarly Unwarranted . . . . . . . . . . . . . . . . . . . . . .  16

             1.    The Inquiry Is Identical and the Result the Same . . . . . . . . . . . . . .  16

             2.    The Forum Shopping Exception Also Applies . . . . . . . . . . . . . . . .  18

             3.    The Anticipatory Suit and Demand Exceptions Also Apply . . . . . . .  19

                   (a)    The Anticipatory Suit Exception Applies . . . . . . . . . . . . . . .  19
                   (b)    The Demand Exception Also Applies . . . . . . . . . . . . . . . . . .  22

             4.    Additional Exceptions Also Apply . . . . . . . . . . . . . . . . . . . . . . . . .  23

III.   SANCTIONS ARE UNWARRANTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

## TABLE OF AUTHORITIES

Page

### CASES

Affymetrix, Inc. v. Synteni, Inc.,
  28 F. Supp. 2d 192 (D. Del. 1998) ............................................................................6,15,16

American Reliable Ins. Co. v. Arrington,
  269 F. Supp. 2d 758 (S.D. Miss. 2003)..........................................................................19, 22

Amersham Pharmacia Biotech v. Perkin- Elmer Corp.,
  11 F. Supp. 2d 729 (S.D.N.Y. 1998) ...............................................................................8,16

Aramark Mgmt Svcs Ltd. v. Martha's Vineyard Hosp.,
  2003 WL 21476091 (N.D. Ill. 2003) ...................................................................................7

Ayala-Branch v. Tad Telecom, Inc.,
  197 F. Supp. 2d 13 (S.D.N.Y. 2002)...................................................................................13

Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,
  757 F.2d 523 (2nd Cir. 1985) ..............................................................................................22

BP Exploration & Production, Inc. v. Callidus Technologies,
  2002 WL 31175217 (E.D. La. 2002)....................................................................................23

Brown v. C.D. Smith Drug Co.,
  1999 WL 709992  (D. Del. 1999).............................................................................13,14,15

Cole-Tuve, Inc. v. American Machine Tools Corp.,
  342 F. Supp. 2d 362 (D. Md. 2004) ......................................................................................2

Compare Successories, Inc. v. Arnold Palmer Enterprises,
  990 F. Supp. 1044 (N.D. Ill. 1998)......................................................................................22

Drugstore Direct, Inc. v. Carter Div.,
  2004 WL 2997512 (E.D. Pa. 2004) .....................................................................................22

E.E.O.C. v. University of Pennsylvania,
  850 F.2d 969 (3rd Cir. 1988) ..............................................................................................22

Page

Employers Reinsurance Corp. v. MSK Ins., Ltd.,
  2003 WL 21143105 (D. Kan. 2003)..............................................................................20,23

Gator.com Corp. v. L.L. Bean, Inc.,
  341 F.3d 1072 (9th Cir. 2003)...............................................................................................1

Genentech, Inc. v. Eli Lilly and Co.,
  998 F.2d 931 (Fed. Cir. 1993)..............................................................................................17

Great Am. Ins. Co. v. M/V Werner,
  1993 WL 96619 (N.D. Cal. 1993) .......................................................................................19

Hanasaka v. Global Terminal & Container Svcs.,
  1992 WL 188365 (S.D.N.Y. 1992).......................................................................................17

Hernandez v. Graebel Van Lines,
  761 F. Supp. 983 (E.D.N.Y. 1991).......................................................................................15

Hoffman v. Blaski,
  363 U.S. 335 (1960).................................................................................................................3

Houston General Ins. Co. v. Equitable Life Assurance Society,
  1989 WL 13473 (W.D.N.Y. 1989)........................................................................................22

IKOS Systems, Inc. v. Cadence Design Systems, Inc.,
  2002 WL 31414136 (D. Del. 2002) ......................................................................................16

International Truck & Engine Corp. v. Dow-Hammond Trucks, Inc.,
  221 F. Supp. 2d 898 (N.D. Ill. 2002).....................................................................................5

JSP International v. Tri-Tech Group, Inc.,
  1995 WL 413299 (S.D.N.Y. 1995) .......................................................................................17

Kirschner Bros. Oil Co. v. Pannill,
  697 F. Supp. 804 (D. Del. 1988) ..........................................................................................13

Lynch v. Vanderhoef Builders,
  237 F. Supp. 2d 615 (D. Md. 2002)........................................................................................2

Mass v. McClenahan,
  1993 WL 267418 (S.D.N.Y. 1993) .......................................................................................22

Page

Mattel, Inc. v. Procount Bus. Svcs, Inc.,
   2004 WL 502190 (S.D.N.Y. 2004) ........................................................................5

Mentor Graphics Corp. v. Quickturn Design Systems, Inc.,
   77 F. Supp. 2d 505 (D. Del. 1999) ........................................................................8

National Patent Dev. Corp. v. American Hosp. Supply Corp.,
   616 F. Supp. 114 (S.D.N.Y. 1984) ........................................................................17

Nilssen v. Everbrite, Inc.,
   2001 WL 34368396 (D. Del. 2001) ....................................................................7,9

Nilssen v. Osram Sylvania, Inc.,
   2001 WL 34368395 (D. Del. 2001)....................................................................9,13

Original Creatine Patent Co., Ltd v. Kaizen, Inc.,
   2003 WL 179996 (D. Del. 2003) ........................................................................16

Pennwalt Corp. v. Purex Industries, Inc.,
   659 F. Supp. 287 (D. Del. 1986)..........................................................................13

Reiffin v. Microsoft Corp.,
   104 F. Supp. 2d 48 (D.D.C. 2000) ........................................................................6

Reliance Ins. Co. v. Six Star, Inc.,
   155 F. Supp. 2d 49 (S.D.N.Y. 2001) ..................................................................17

Riviera Trading Co. v. Oakley, Inc.,
   944 F. Supp. 1150 (S.D.N.Y. 1996) ...................................................17,18,22,23

Road Machinery & Supplies Co. v. Federal Signal Corp.,
   2003 WL 22326577 (D. Minn. 2003) ..................................................................7

S & S Candies, Inc. v. Hershey Foods Corp.,
   2000 WL 1425092 (S.D.N.Y. 2000) ...............................................................19,22

Solomon v. Continental Am. Life Ins. Co.,
   472 F.2d 1043 (3rd Cir. 1973) .............................................................................19

Sports Innovations, Inc. v. Specialized Bicycle Components, Inc.,
   2001 WL 406264 (E.D. La. 2001) ......................................................................23

Page

Schmidt v. American Institute,
 322 F. Supp. 2d 28 (D.D.C. 2004) ....................................................................2

Seabaord Surety Co. v. Texas City Refining,
 109 F. Supp. 468 (D. Del. 1952) ....................................................................23

Sinatra v. National Enquirer, Inc.,
 854 F.2d 1191 (9th Cir. 1988)………………………………………………………1

Steelchase, Inc. v. Mar-Mol Co.,
 210 F. Supp. 2d 940 (W.D. Mich. 2002) .......................................................10

Thomas v. Home Depot, USA., Inc.,
 131 F. Supp. 2d 934 (E.D. Mich. 2001) ........................................................10

Unicredito Italiano v. J.P. Morgan Chase Bank,
 2002 WL 1378226 (D. Del. 2002)....................................................................8

Uresil Corp. v. Cook Group, Inc.,
 1988 WL 124335 (N.D. Ill. 1988)....................................................................2

Virgin Wireless, Inc. v. Virgin Enterprises, Ltd.,
 201 F. Supp. 2d 294 (D. Del. 2002) ...............................................................22

Z-Line Designs, Inc. v. Bell'O Int'l LLC,
 218 F.R.D. 663 (N.D. Cal. 2003) ...................................................................22

1    Defendant Archos, Inc. ("Archos") and plaintiff DivXNetworks, Inc. ("DivX") both have

2  their principal place of business in Southern California, which is also the location of virtually all

3  of their employees. The dispute between the parties at issue in this litigation arose in California.

4  The witnesses and documents are all in California. California is the most logical and convenient

5  forum in which this dispute between these two California parties should be resolved.

6    Archos nonetheless contends that this matter should be litigated in Delaware – a forum

7  that has utterly no connection to the dispute – because Archos rushed to court first and filed a

8  declaratory judgment action in that forum. However, Archos is mistaken. The Delaware action

9  is a textbook example of forum shopping, a longstanding exception to the first-filed rule. It is

10 also anticipatory, yet another exception. This case should be litigated in California, where

11 Archos, DivX, and all of the witnesses and documents reside.

12

13 **I.    DEFENDANT'S OBJECTION TO JURISDICTION IS MERITLESS.**

14

15    Section I (3:15-5:10) of Archos' motion contends that this action must "be dismissed for

16 lack of personal jurisdiction." This argument is frivolous. Archos is incorporated and has its

17 principal place of business in California.[1] It is thus subject to personal jurisdiction in this forum

18 both as a resident and as a result of general jurisdiction here.[2] Specific jurisdiction also exists

19 because the underlying causes of action (for trademark infringement) arose in this State.[3]

20    The claim by Archos that this California federal court lacks personal jurisdiction over a

21 California corporation with its principal place of business in California is meritless.

22

23    [1] See Declaration of Shaun P. Martin dated January 14, 2005 ("Martin Decl."), ¶¶ 2-3.

24    [2] See Cal. Code Civ. P. § 410; Walter Heiser, A 'Minimum Interest' Approach to
25 Personal Jurisdiction, 35 Wake Forest L. Rev. 915, 924 n.45 (2000) ("Other traditional, well-
   accepted types of general jurisdiction are . . . a corporate defendant's principal place of business
26 or place of incorporation.").

27    [3] See Martin Decl., ¶¶ 4-5; Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195-98
28 (9th Cir. 1988); see also Gator.com Corp. v. L.L. Bean, Inc., 341 F.3d 1072, 1075-83 (9th Cir.
   2003) (upholding personal jurisdiction on additional bases equally applicable here).

-1-

1    **II.    A TRANSFER, DISMISSAL, OR STAY IS UNWARRANTED.**

2        Section II (at 5:12-7:23) of Archos' motion contends that this Court should dismiss, stay,

3    or transfer this action to Delaware in favor of a first-filed declaratory judgment action filed by

4    Archos in that forum.  This Court should refuse to do so for multiple reasons, any one of which

5    would be sufficient to justify the denial of Archos' request.  This action is properly litigated in

6    the only forum that has a connection to the parties, the dispute, and the witnesses: California.

7        **A.    Transfer Would Be Improper.**

8        First, Archos has not satisfied – and cannot satisfy – its burden of demonstrating that a

9    transfer to Delaware would be permissible.  Transfer is permitted only to a forum in which the

10   action "might have been brought" by the plaintiff. 28 U.S.C. § 1404(a).  "In a motion pursuant to

11   § 1404(a), the burden is on the moving party to show that transfer to another forum is proper."[4]

12   Pursuant to this evidentiary burden, "the defendant must make two showings to justify transfer.

13   First, the defendant must establish that the plaintiff originally could have brought the action in

14   the proposed transferee district.  Second, the defendant must demonstrate that considerations of

15   convenience and the interest of justice weigh in favor of transfer to that district."  Schmidt, 322

16   F. Supp. 2d at 31 (citations omitted).

17       Archos' moving papers fail to satisfy *either* of those two evidentiary burdens.

18       **1.    Archos Has Not Established Jurisdiction and Venue in Delaware.**

19       **(a)    Jurisdiction and venue over Archos.**

20       First, Archos' papers are entirely bereft of proof that jurisdiction and venue over Archos

21   would have been initially proper in Delaware.  "The defendants' threshold burden in seeking

22   transfer is to show that venue and jurisdiction are proper in the transferee district."[5]  Because

23   Archos' moving papers do not even attempt to make the required showing, its motion should be

24

25       [4] Lynch v. Vanderhoef Builders, 237 F. Supp. 2d 615, 617 (D. Md. 2002); see also
26   Schmidt v. American Institute, 322 F. Supp. 2d 28, 31 (D.D.C. 2004) (same); Cole-Tuve, Inc. v.
     American Machine Tools Corp., 342 F. Supp. 2d 362, 369 (D. Md. 2004) (same).

27       [5] Uresil Corp. v. Cook Group, Inc., 1988 WL 124335, *3 (N.D. Ill. 1988); see also
28   Schwarz, 317 F. Supp. 2d at 834 ("Where a party moves to transfer venue pursuant to section
     1404(a), the burden is on the movant to establish that venue is proper in the transferee court.").

1  denied. Moreover, on the merits, Archos' assertion that jurisdiction is improper even in its *home*

2  state, California, supports an even stronger (and more tenable) conclusion regarding the lack of

3  jurisdiction and venue in Delaware, with which Archos has substantially fewer (if any) contacts.

4          Archos may well contend that it waived any jurisdictional objection when it chose to file

5  suit in Delaware; however, the Supreme Court rejected a similar waiver argument in Hoffman v.

6  Blaski, 363 U.S. 335 (1960); instead, the "events that occurred in the forum district [sufficient to

7  establish venue] must be a part of the historical predicate of the claim." Schwarz, 317 F. Supp.

8  2d at 834. The claim for trademark infringement alleged in the present action arose from the

9  California conduct of Archos in selling infringing products, not from Archos' filing of a suit in

10  Delaware. Archos accordingly has not satisfied its burden of establishing that jurisdiction and

11  venue would have been initially proper in Delaware. Moreover, the uncertain propriety of any

12  transfer to Delaware counsels strongly in favor of adjudication in the one forum in which all of

13  the parties are currently found (indeed, have their principal place of business): California.

14                              **(b)    Jurisdiction and venue over Archos, S.A.**

15          Independently, transfer would be improper given the status of Archos S.A., which is not a

16  party to the Delaware action. Although it is the parent company of Archos, Archos S.A. has not

17  requested a transfer to Delaware.[6] Nor is there any showing that jurisdiction and venue would

18  exist over Archos S.A. – a foreign company – in Delaware.[7] The trademark infringement claims

19  against Archos S.A. accordingly are and will be litigated only in the present forum, California.

20          The fact that the claims against Archos S.A. exist only in this forum counsels strongly

21  against a transfer, stay or dismissal. The claims against Archos S.A. are substantial ones; indeed,

22  not only is Archos S.A. a much larger defendant, but it – not Archos – is also the defendant with

23  the principal exposure in this action, particularly given the previous relationship between Archos

24

25

26          [6] Rather than request a transfer, Archos S.A. apparently prefers to interpose service-related objections to the present action, potentially alongside other defenses. Martin Decl., ¶ 6.

27          [7] By contrast, the contact between Archos S.A. and California is massive, and will clearly
28  give rise to jurisdiction and venue in California pursuant to, inter alia, Fed. R. Civ. P. 4(k)(2) and 28 U.S.C. § 1391(d). Martin Decl., ¶ 7.

1  S.A. and DivX.[8]  Moreover, many of the additional claims that DivX believes discovery in this

2  action will likely reveal (e.g., claims for copyright infringement and theft of trade secrets) will be

3  principally, if not exclusively, asserted against Archos S.A.  Dehaine Decl., ¶ 3.

4          Because the claims against Archos S.A. will be litigated in California, a severance of the

5  related contentions against its subsidiary – whether through a transfer, dismissal, or stay – would

6  be unwarranted.  The present action is nearly identical in this regard to Uresil:

7          [T]he Southern District of Indiana cannot exercise personal jurisdiction over
           Wilson, a North Carolina corporation.  Defendants argue that we should sever
8          Wilson from this action and transfer Cook and Cook Urological to the Southern
           District of Indiana.  We view severance here as disserving the very goals §
9          1404(a) is designed to promote. . . . Uresil's rights and duties in relation to Wilson
           coincide with those arising from its relationship with Cook and Cook Urological.
10         We cannot ignore the real possibility that severing the claims would result in
           duplicative litigation in two federal courts over two hundred miles apart, with the
11         parties shuttling witnesses and documents back and forth.  Further, the cause of
           litigation in the two courts may be such that identical issues are resolved
12         differently.  In sum, convenience to the parties and witnesses, the expeditious
           resolution of this dispute and the efficient allocation of judicial resources would
13         suffer if we were to sever Wilson and transfer Cook and Cook Urological.

14  Uresil, 1998 WL 124335 *3 (denying motion to transfer on this basis).

15         Claims against Archos S.A. are only pending in California, where they were first-filed,

16  and cannot properly be transferred to Delaware.  The claims against the subsidiary should not be

17  litigated in a different forum from the substantial claims against the parent.  DivX intends to file

18  contemporaneously with this opposition a motion to transfer the Delaware action to the present

19  forum.  Regardless of the resolution of such a motion, the Delaware court exercises jurisdiction

20  only over Archos, whereas both the parent and the subsidiary are parties to the current action.

21  They should remain so, and the motion to transfer, dismiss or stay denied on this basis.  Archos

22  S.A. and Archos, rather than being split, should properly be held to answer together in California.

23              **2.    Archos Has Not Established That Delaware Is More Convenient.**

24         Even if a transfer of this action to Delaware were permissible, it would be unwarranted,

25  and Archos' motion properly denied.  Simply put, California is a much more convenient and

26  efficient forum for the resolution of this action than is Delaware.

27

28
           [8] See Declaration of Lisa Dehaine dated January 14, 2005 ("Dehaine Decl."), ¶ 2.

1    Initially, as a procedural matter, Archos has not satisfied its burden of establishing that
2  the balance of conveniences strongly favor transfer to Delaware. "The movant has the burden of
3  establishing, by reference to particular circumstances, that the transferee forum is clearly more
4  convenient." Schwarz, 317 F. Supp. 2d at 833. Archos' moving papers do not even attempt to
5  make this required showing; indeed, they do not even mention – much less analyze – any of the
6  approximately dozen dispositive factors that control the propriety of a transfer. Archos' failure
7  to satisfy this burden is not only procedurally improper, but also forces DivX to guess at Archos'
8  position on these factors, with an inability to respond to any reply. Given its manifest failure to
9  satisfy its burden, Archos' motion is properly denied on this basis alone.

10    Regardless, on the merits, there is no doubt whatsoever that California is a superior forum
11  to Delaware. This fact is critical to both Archos' motion to transfer as well as its nearly identical
12  (and substantively equivalent) request to dismiss or stay the present action. California is the best
13  forum in which the present dispute should be resolved; indeed, *every single transfer factor* favors
14  adjudication of this action in California rather than Delaware.

15               **(a)    Party Preference: California**

16    The first factor in assessing the propriety of a transfer is the preference of the parties.[9]
17  Plaintiff's preference to have this matter heard in California is entitled to great weight, whereas
18  Archos' contrary preference is not. "[A] plaintiff's choice of forum is given substantial weight
19  where it is the plaintiff's home forum."[10] Here, plaintiff DivX has filed suit in its home forum,
20  California. Moreover, California is not only the home turf (and principal place of business) of
21  plaintiff DivX, but of defendant Archos as well. Martin Decl., ¶ 8. The preference for California
22  expressed by DivX is entitled to great weight. By contrast, Archos' preference for Delaware –
23  even though expressed first – is entitled to little weight since Archos filed the action outside of
24  its home turf in California. See Mattel, Inc. v. Procount Bus. Svcs, Inc., 2004 WL 502190, *5

---

25

26    [9]    See In Re DVI, Inc., 2004 WL 1498593, *2 (D. Del. June 23, 2004) (listing factors to be considered in assessing motion to transfer).

27    [10]  Technical Concepts, L.P. v. Zurn Industries, Inc., 2002 WL 31433408, * 3 (N.D. Ill.
28  2002); see also International Truck & Engine Corp. v. Dow-Hammond Trucks, Inc., 221 F. Supp. 2d 898, 904 (N.D. Ill. 2002).

1   (S.D.N.Y. 2004) ("[A] plaintiff's choice of forum is entitled to little weight when a plaintiff

2   brings suit outside his home forum.") (citing cases); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.

3   2d 192, 198-200 (D. Del. 1998) (noting and applying same rule).

4          This first factor – party preference – accordingly strongly weighs in favor of retaining and

5   resolving the current action in California.  See Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 52

6   (D.D.C. 2000) ("Deference to the plaintiff's choice of forum is particularly strong where the

7   plaintiff has chosen his home forum.  Conversely, substantially less deference is warranted when

8   the forum preferred by the plaintiff is not his home forum.") (citations omitted).

9                    **(b)    Where the Claim Arose: California**

10         The second factor in assessing the propriety of a requested transfer is where the claim

11  arose.  In Re DVI, 2004 WL 149593 *2.  This factor also strongly favors adjudication of the

12  present dispute in California rather than Delaware.

13         None of the events at issue in this lawsuit occurred in Delaware.  Not only does Delaware

14  have nothing whatsoever to do with the disputes between the parties, but none of the parties have

15  even a single employee in that state. Dehaine Decl., ¶ 3.  Virtually every single act relevant to

16  the disputes between the parties occurred not in Delaware, but in California.  Archos engaged in

17  the acts of trademark infringement alleged in the present Complaint in California, which is the

18  state in which Archos' corporate headquarters, principal place of business, and virtually all of its

19  employees are located. Dehaine Decl., ¶ 4.  It is there that the California action arose.  Similarly,

20  Count One of the Delaware action – which seeks a declaratory judgment of non-infringement –

21  also arose in California, from precisely those same California activities.[11]  Count Two of the

22  Delaware action, which asserts a claim for tortious interference, similarly arose in California

23  when DivX (located in California) sent a cease and desist letter from its corporate headquarters

24

25         [11]  Dehaine Decl., ¶ 5.  Count One particularly grounds its claim for declaratory relief on
26  the fact that DivX mailed Archos letters from DivX's corporate headquarters – in California – to
    Archos (whose U.S. corporate headquarters are also in California) that threatened a trademark
27  infringement suit. Delaware Complaint, ¶¶ 9-11 & 17; Dehaine Decl., ¶ 6 (attaching both of the
28  complained-of letters and noting that they were each sent from DivX's corporate headquarters in
    San Diego, California).

1   (in San Diego) to the headquarters of Buy.com in Alijo Viejo, California, allegedly harming a

2   California corporation (Archos) with its principal place of place of business in California.[12]

3         There is accordingly no doubt that this action arose in California. California is where all

4   of the employees of both DivX and Archos reside. California is where Archos engaged in acts of

5   trademark infringement and where DivX allegedly interfered with Archos' California customers.

6   California is the only forum with any central connection to either the parties or the underlying

7   dispute. By contrast, neither of the parties engaged in *any* conduct in Delaware that gave rise to

8   this suit. Delaware is merely DivX's place of incorporation. It is not where the cause of action

9   arose. See Aramark Mgmt Svcs Ltd. v. Martha's Vineyard Hosp., 2003 WL 21476091, *2 (N.D.

10  Ill. 2003) (noting that matters such as incorporation are "irrelevant to the test [for transferring

11  venue]" and that "it is the conduct complained of" that is the dispositive inquiry).

12        Because California is the forum in which the cause of action arose, this fact significantly

13  favors adjudication in California rather than Delaware. See also Road Machinery & Supplies Co.

14  v. Federal Signal Corp., 2003 WL 22326577, *3 (D. Minn. 2003) ("Plaintiff's choice of forum is

15  given substantially less weight if operative events giving rise to the lawsuit took place in a forum

16  other than that chosen by the plaintiff."); Nillsen v. Everbrite, 2001 WL 34368396, *4 (D. Del.

17  2001) (refusing to adjudicate action in Delaware when "Delaware's only connection to this case

18  is that Defendant sold some of the allegedly infringing products in Delaware").

19        The second factor thus also strongly favors California rather than in Delaware.

20        **(c)    The Convenience of the Parties: California**

21        The third factor in assessing the propriety of a requested transfer is which forum would be

22  more convenient for the parties. In Re DVI, 2004 WL 149593 *2. This factor similarly strongly

23  favors California rather than Delaware. Both Archos and DivX have their headquarters and sole

24  facilities in southern California; nearly all of the employees of both parties reside in California;

25  and neither of the parties have any employees in Delaware. Dehaine Decl., ¶ 8. The central –

26

27      [12] Delaware Complaint, ¶¶ 13-14 & 21-25; Dehaine Decl., ¶ 7 (attaching complained-of
    letter and noting that it was sent from DivX's corporate headquarters in San Diego, California to

28  the corporate headquarters of Buy.com in Aliso Viejo, California).

1  and virtually exclusive – locus of both plaintiff and defendant is southern California.  Dehaine

2  Decl., ¶ 9.  It would thus be substantially more convenient for *both* of the parties to litigate in the

3  Southern District of California rather than Delaware.

4          The presence of both parties in California, rather than Delaware, weighs strongly in favor

5  of judicial resolution of this action in California.  See, e.g., Mentor Graphics Corp. v. Quickturn

6  Design Systems, Inc., 77 F. Supp. 2d 505, 509 (D. Del. 1999) ("Both Mentor and Quickturn are

7  physically located on the west coast.  Quickturn is headquartered in San Jose, California. . . .

8  Mentor is headquartered in Wilsonville, Oregon [and] maintains a regional headquarters in San

9  Jose.  Neither party has any facilities, property, or employees located in the State of Delaware.")

10 (adjudicating action in California, rather than Delaware, on this basis).

11         With respect to the convenience of the parties, the analysis of Unicredito Italiano v. J.P.

12 Morgan Chase Bank, 2002 WL 1378226 (D. Del. 2002), is equally applicable to the present case:

13         The plaintiffs [] note that Delaware is a short distance away from New York, and
           it would therefore [allegedly] not be inconvenient for the litigation to proceed
14         here.  Although it is true that the parties would be able to travel to Delaware in a
           relatively short time, it seems unreasonable to require such travel when the
15         business operations of the parties are headquartered in New York, the majority of
           the documents and witnesses are in New York, and no party is headquartered in
16         Delaware or conducts business in Delaware that is as significant as the business it
           conducts in New York.  Thus, the convenience factor weighs heavily in favor of
17         transfer to New York.

18 Id. at *2 (adjudicating action in New York rather than Delaware on this basis).  The same facts

19 that existed in that case also exist here, with the only difference that California is twenty times

20 *more* distant from Delaware than is New York, thereby further enhancing the inconvenience of a

21 Delaware forum.  See Amersham Pharmacia Biotech, Inc. v. Perkin- Elmer Corp., 11 F. Supp. 2d

22 729, 730 (S.D.N.Y. 1998) (noting that convenience factors "loom large when deciding between

23 fora separated by roughly 3000 miles") (transferring action to California on this basis).

24         Accordingly, as in Unicredito and Mentor Graphics, the third factor also strongly favors

25 adjudication of the present dispute in California rather than in Delaware.

26              **(d)       The Location of the Witnesses: California**

27         The fourth factor in the transfer analysis is the location of the witnesses.  This factor very

28 strongly favors California.  All of the witnesses reside and are employed in California.  None are

- 8 -

1  in Delaware (or, indeed, have anything to do with Delaware).  Moreover, several witnesses are

2  beyond the subpoena power of a Delaware court and hence would not be available for trial in that

3  forum.  These facts very strongly favor adjudication of the present dispute in California.

4       Because this litigation is at its very initial stages, a complete list of witnesses and a full

5  explication of their testimony is obviously impossible.  It is also not required.  See Nilssen v.

6  Osram Sylvania, Inc. ["Osram"], 2001 WL 34368395, *3 (D. Del. 2001) (noting that a general

7  description of relevant witnesses and issues is sufficient, and witnesses need not be identified by

8  name, "especially when discovery has yet to take place"); Nilssen v. Everbrite, Inc. ["Everbrite"],

9  2001 WL 34368396, *3 (D. Del. 2001) (same).

10      Regardless, even at this early stage, two critical facts are beyond dispute.  First, nearly all

11  of the witnesses are located in California.  Second, none of the witnesses are located in Delaware.

12      The following is a general description of the relevant witnesses and their testimony:

13      Employees of DivX.  Employees of DivX will obviously be critical to this litigation, and

14  will provide a vast amount of testimony on behalf of plaintiff.[13]  These DivX employees – like

15  virtually every DivX employee – both reside and work in the Southern District of California, and

16  none reside in Delaware.  Martin Decl., ¶ 15.  It would be a substantial inconvenience to these

17  employees and to DivX if they were forced to travel thousands of miles from their homes and

18  work to attend and/or testify at a trial in Delaware.  Martin Decl., ¶ 16.

19      Employees of Archos.  Employees of Archos will obviously also be critical witnesses in

20  this litigation.  These witnesses will also testify to all facets of the litigation,[14] and These Archos

21

---

22  [13]  These witnesses will testify to all facets of the litigation, including the background and
    validity of the DivX® trademark, the value of that trademark, the nature and extent of DivX®
23  licensing, the appropriate reasonable royalty rate and the damages resulting from Archos'
    misconduct, the incompatibility of Archos' products with DivX®, the false and misleading nature
24  of Archos' representations, and the wilful nature of the Archos' infringement in light of the prior
25  relationship between DivX and Archos and the incriminating conversations and statements made
    by or to Archos employees and/or the third party engineers hired by Archos in its unsuccessful
26  attempt to make Archos' products compatible with DivX®.  Martin Decl., ¶ 14.

27  [14]     DivX will particularly demand the testimony of these witnesses to establish the
28  use of the DivX® trademark by Archos (and its extent), the content of the representations made
                                                                              (continued...)

-9-

1   employees – like virtually every other Archos employee – both reside and work in California.

2   Martin Decl., ¶ 18.  None reside in Delaware.  Martin Decl., ¶ 19.

3   The fact that these numerous party-affiliated witnesses will be forced to leave their work

4   and families and travel thousands of miles to Delaware for trial were the case transferred to that

5   forum is entitled to some weight.[15]  The presence of these witnesses favors adjudication in

6   California as opposed to a transfer of this action to far-flung Delaware.

7   Non-Party Witnesses.  There are also a plethora of witnesses in California who are not

8   employees of the parties and hence are beyond the subpoena power of a Delaware federal court.

9   None of these witnesses could be subpoenaed for trial in Delaware; by contrast, each could be

10  compelled to appear for trial herein.  See Fed. R. Civ. P. 45(c)(3) (permitting subpoena of any

11  witness within State); see also Everbright, 2001 WL 34368396, *3 ("[I]t is sufficient for

12  purposes of venue transfer analysis if the witness is not subject to a court's subpoena power.").

13  The early stage of this litigation, and the lack of any discovery, precludes a complete list

14  of the many California nonparty witnesses.  There are assuredly many of them; indeed, because

15  California is both the location of all parties and the center of high-technology industry, it is likely

16  that *most* nonparty witness will reside in California (not Delaware).  Martin Decl., ¶ 20.

17  Regardless, even at this early stage of the litigation, a partial list of some of the relevant

18  nonparty witnesses can be made.  These witnesses include:

19

20  ───────────────
    [14](...continued)
21  by Archos through the use of this trademark, the basis (or lack thereof) upon which Archos made
    those representations, the actual compatibility or incompatibility of Archos' products with
22  DivX®, the extent (and failure) of Archos' efforts to make its products compatible with DivX®,
    the number and nature of the many complaints that Archos has fielded from customers about the
23  inability of Archos' products to play DivX® content, the reasonable royalty for utilization of the
    DivX® trademark, the business and sales benefits that arise to Archos from the use of the DivX®
24  trademark, and the facts surrounding Archos' knowledge that its products were incompatible
25  with DivX® content notwithstanding its contrary representations.  Martin Decl., ¶ 17.

26  [15] See Thomas v. Home Depot, USA., Inc., 131 F. Supp. 2d 934, 938-39 (E.D. Mich.
    2001) (discussing at length and rejecting the contrary argument that the convenience of party
27  witnesses should be given no weight); Steelchase, Inc. v. Mar-Mol Co., 210 F. Supp. 2d 940, 941
28  (W.D. Mich. 2002) ("Although the convenience of the employee-witnesses is generally entitled
    to less weight than the convenience of non-[employee] witnesses, it is still a consideration.").

1    (1) <u>Charles Cortright</u>. Charles Cortright resides in California, is not currently employed
2  by any party, interfaced directly with Archos (and Archos' non-party engineers at Ingenient)
3  regarding DivX® technology, and is a witness with testimony relevant to infringement (e.g., the
4  falsity of Archos' representations and incompatibility of Archos' products with DivX®) as well as
5  wilfulness (e.g., Archos' knowledge of the false and misleading nature of its statements).

6    (2) <u>Logan Decker</u>. Logan Decker resides in California, is not currently employed by any
7  of the parties, and is a witness with testimony relevant to the value of the DivX® technology to
8  both consumers and to Archos' products, the misleading and false nature of Archos' utilization
9  of the DivX® trademark, the falsity of Archos' representations and incompatibility of Archos'
10  products with DivX®, and the burden on and reaction of consumers to both the representations
11  made by Archos and the interaction between Archos' products and DivX® content.

12    (3) <u>Adam Li</u>. Adam Li resides in California, is not currently employed by any party, and
13  is a witness with testimony relevant to the compatibility of portable devices (including those
14  produced and sold by Archos) with DivX®, the content and benefits of DivX® certification and
15  compatibility with DivX®, and the wilfulness of Archos' infringement (e.g., Archos' knowledge
16  of the false and misleading nature of its statements and use of the DivX® trademark).

17    (4) <u>David Salvator</u>. David Salvator resides in California, is not currently employed by
18  any of the parties, and is a witness with testimony relevant to the value of the DivX® technology
19  to both consumers and to Archos' products, the content of representation made by Archos
20  regarding the compatibility of its products with DivX®, the false and misleading nature of the
21  utilization of the DivX® trademark by Archos, the incompatibility of Archos' products with
22  DivX®, and the burden on and reaction of consumers to the interaction and incompatibility
23  between Archos' products and DivX® content.

24    (5) <u>Subba Vuppala</u>. Subba Vuppala resides in California, is not currently employed by
25  any party, and is a witness with testimony relevant to the compatibility of Archos' products with
26  DivX® and the wilfulness of Archos' infringement (e.g., Archos' knowledge of the false and
27  misleading nature of its statements and use of the DivX® trademark).

28

(6) <u>Shane Winters</u>. Shane Winters resides in California, is not currently employed by any of the parties, and is a witness with testimony relevant to the incompatibility of Archos' products with DivX®, the false and misleading nature of Archos' representations and its use of the DivX® trademark, the extent and contents of complaints made by consumers of Archos products about the incompatibility of those products with DivX®, and the reaction of consumers to the nature of the relationship between Archos' products and DivX.

(7) <u>Robert Yamashita</u>. Robert Yamashita resides in California, is not currently employed by any party, interfaced with Archos (and Archos' non-party engineers at Ingenient) regarding DivX® technology, supervised individuals at DivX who communicated with Archos regarding DivX® technology and Archos' products, and is a witness with testimony relevant to the benefits of DivX® technology and compatibility to consumer product manufacturers (including Archos), infringement issues (e.g., the falsity of Archos' representations and incompatibility of Archos' products with DivX®), wilfulness (e.g., Archos' knowledge of the false and misleading nature of its statements), and the state law tortious interference claim brought by Archos based upon the alleged interference by DivX of the contractual relationship between Archos and Buy.com (and other sellers of Archos' products).

(8) <u>Ben Yen</u>. Ben Yen resides in California, is not currently employed by any of the parties, worked and communicated with both a large number of Archos' competitors and non-party engineers, and is a witness with testimony relevant to the benefits and value of DivX® technology and compatibility as well as Archos' state law tortious interference claim.

(9) <u>Employees of Buy.com</u>. Archos has brought a state law tortious interference claim based upon the alleged disruption by DixX of Archos' contractual relationship with Buy.com. Buy.com has its principal place of business and nearly all of its employees, including all of the relevant employees, in Southern California, and none are in Delaware. These Buy.com witnesses possess relevant information and testimony regarding the existence (or non-existence) of any disruption in the Archos/Buy.com relationship, the extent of this disruption (if any), the reasons for any disruption, the extent of lost sales (if any), the amount of lost profits (if any), the reaction of Buy.com to the communication sent by DivX to Buy.com, and the extent of sales by Buy.com

-12-

1  of Archos' products, including but not limited to the "Infringing Products" that are at issue in the

2  Complaint in this action. See Martin Decl., ¶¶ 21-30 (describing the identity and relevance of

3  each of these above-described witnesses).

4      None of these witnesses is subject to the subpoena power of a Delaware federal court,

5  whereas each could be compelled to attend trial in the present forum. Even if these individuals

6  could be effectively deposed, their depositions would be no substitute for personal appearance

7  and live cross-examination before a jury. See Everbrite, 2001 WL 34368396, *3 (discussing the

8  importance of personal appearances and noting that the claim that depositions are a substitute for

9  attendance at trial should be "summarily rejected"); Osram, 2001 WL 34368395, *3 (same).

10     The presence of witnesses beyond the subpoena power of the proposed transferee court

11  weighs extremely heavily against the propriety of such a transfer.[16] The potential unavailability

12  of such witnesses at trial should indeed alone preclude a transfer. See Pennwalt Corp. v. Purex

13  Industries, Inc., 659 F. Supp. 287 (D. Del. 1986) ("The availability of witnesses, in particular the

14  amenability of nonparty witnesses to subpoena, is in the context of this case the most critical

15  factor in deciding this motion to transfer."); Kirschner Bros. Oil Co. v. Pannill, 697 F. Supp. 804,

16  808 (D. Del. 1988) ("The comparative abilities of the transferor and the transferee forums to

17  subpoena non-party witnesses is a critical factor in determining the interests of justice.").

18     The undisputed presence of both party and nonparty witnesses in California -- especially

19  alongside the undisputed *absence* of any such witness in Delaware -- is an exceptionally strong

20  factor that favors (if not compels) the continued resolution of the current action in California.

21          (e)    **The Books and Records: California**

22     The fifth factor in the transfer inquiry is the location of relevant books and records. In Re

23  DVI, 2004 WL 149593 *2. This factor again favors California rather than Delaware.

24     All of the relevant documents are in California. None are in Delaware. Dehaine Decl., ¶

25  12. Accordingly, as in Brown, both pretrial activities as well as "trial in Delaware would require

26  the shipment of voluminous materials from [California] to Delaware. Although . . . transportation

27  _____

28      [16] Ayala-Branch v. Tad Telecom, Inc., 197 F. Supp. 2d 13, 15-16 (S.D.N.Y. 2002); In Re
DVI, 2004 WL 1498593, *2; Everbrite, 2001 WL 34368396, *3.

- 13 -

1  of documents alone does not justify transfer, in the present case this burden is simply one more

2  factor" that favors resolution of this action in the current forum.  Brown v. C.D. Smith Drug Co.,

3  1999 WL 709992, *6 (D. Del. 1999).[17]  The fifth factor accordingly also favors California.

4  **(f)    The Enforceability of a Judgment: California**

5       The sixth factor in the transfer inquiry is the enforceability of any resulting judgment.  In

6  Re DVI, 2004 WL 149593 *2.  Enforcement would obviously be slightly easier in California than

7  in Delaware because the assets of both entities are contained in the former, not the latter.  So this

8  factor would favor California -- albeit only slightly -- even upon an initial glance.

9       Moreover, as explained supra, the potential invalidity of any transfer to Delaware (due to

10  the fact that the present action could not have "initially been brought" there) would mean that the

11  appellate enforcement of any resolution in that forum would be far from certain.  By contrast, it is

12  clear that personal jurisdiction exists in California over Archos, a California corporation.

13       Accordingly, the certain enforceability of a judgment against both Archos and DivX in

14  California also weighs in favor of adjudication in the present forum.

15  **(g)    Practical Considerations: California**

16       The seventh factor in the transfer inquiry consists of "practical considerations that could

17  make the trial easy, expeditious, or inexpensive."  In Re DVI, 2004 WL 149593 *2.  Litigation in

18  Delaware requires *both* parties to retain local counsel in that forum, which multiplies the cost of

19  the litigation, and also requires counsel for both parties -- as well as their clients -- to travel to that

20  far-flung forum for motions, hearings, settlement conferences, and trial.  Martin Decl., ¶ 9.  The

21

22       [17] The infringement claim will rely heavily upon the following documents, all of which
   are in California: (1) the voluminous documents produced and possessed by Archos in which it
23  employs and utilizes the DivX® trademark, (2) the many documents possessed by Archos that
   reflect its claims regarding the compatibility of its products with DivX®, as well as the many
24  Archos documents that establish the accuracy (or inaccuracy) of those claims; (3) the Archos
   documents relevant to the volume of sales of alleged DivX®-compatible Archos products, the
25  benefit of purported DivX® compatibility in the sales of these products, and the wilfulness of
26  Archos' infringement, and (4) the many documents possessed by DivX regarding the extent,
   value and validity of the DivX® trademark.  Dehaine Decl., ¶ 10.  Further critical to not only the
27  infringement claim but also Archos' claim of tortious interference will be documents of Archos
28  and Buy.com -- both of which are in California -- regarding the disruption of their business
   relationship and the extent of resulting damages and alleged lost sales.  Dehaine Decl., ¶ 11.

1   present forum, by contrast, will not only require local counsel for only one of the parties, but will

2   also reduce the travel costs of repeated cross-country flights by both clients, since both DivX and

3   Archos are within 75 miles of San Diego (but 3000 miles from Delaware).  Martin Decl., ¶ 9.

4          These practical considerations accordingly also favor California as opposed to Delaware.

5   See Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 205-6 & 209 (D. Del. 1998) (electing to

6   resolve action in California rather than Delaware in part because adjudication in California would

7   reduce need for local counsel); Brown, 1999 WL 709992, *6 (forcing key corporate employees to

8   travel hundreds of miles to Delaware "weighs heavily" in favor of alternative local forum).

9                        **(h)     Court Congestion: California**

10         The eighth factor in the transfer inquiry consists of "docket conditions or calendar

11  congestion of both the transferee and transferor districts . . . and is accorded some weight."

12  Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 991 (E.D.N.Y. 1991); see also In Re DVI,

13  2004 WL 149593 *2 (applying this same factor).  The latest statistics from the Administrative

14  Office of the United States Courts reveal that the District of Delaware takes nearly *twice* as long

15  to resolve the median civil lawsuit (11.2 months) than does the Southern District of California

16  (6.5 months), and that the median time to trial in Delaware is also longer.  Martin Decl., ¶ 10.

17  This factor accordingly also favors California.

18                       **(i)     Public Policies and Local Interest: California**

19         The final factor in the transfer inquiry is the local interest and public policies of the

20  forum.  In Re DVI, 2004 WL 149593 *2.  The local interest in resolving a dispute that arose in

21  California between two entities whose corporate headquarters, employees, and principal places of

22  business are all in California is obviously higher in California than in Delaware.  Further, each of

23  the state law claims raised by the parties will be governed by California law, and a California

24  federal court will have substantially more exposure and expertise than would a Delaware judge in

25  these matters.  Martin Decl., ¶ 11 (noting that Archos' Delaware Complaint expressly alleges that

26  the state law tortious interference claims alleged therein arise under California law and California

27  statutes, and noting that the California Complaint similarly alleges California state common law

28  and statutory claims).  This factor accordingly also favors California.

1      The factual circumstances of the present case are virtually unprecedented. *Every single*
2  *dispositive factor* favors adjudication of the present dispute in California rather than in Delaware.
3  The parties are here. The witnesses and documents are here. The claim arose here. It would be
4  more convenient and less costly to litigate here. The practical considerations all favor litigation
5  in the present forum as opposed to Delaware.

6      This case is thus a textbook example of an action that should be heard in California rather
7  than in Delaware. Indeed, in this regard, resolution in California is even *more* proper than it has
8  been in the legions of other cases in which California has also been selected over Delaware. See,
9  e.g., IKOS Systems, Inc. v. Cadence Design Systems, Inc., 2002 WL 31414136 (D. Del. 2002)
10  (dispute between two corporations with principal places of business in California should be
11  resolved in California even though lawsuit was initially filed in Delaware and all parties were
12  incorporated in Delaware); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192 (D. Del. 1998)
13  (suit filed in Delaware by California corporation against two Delaware corporations should be
14  resolved in California, the state of their principal places of business); Original Creatine Patent
15  Co., Ltd v. Kaizen, Inc., 2003 WL 179996 (D. Del. 2003) (patent dispute between foreign entity
16  and California corporation that arose principally in California should be resolved in California
17  rather than Delaware); Amersham Pharmacia Biotech v. Perkin- Elmer Corp., 11 F. Supp. 2d 729
18  (S.D.N.Y. 1998) (infringement suit brought by Delaware corporation should be resolved in
19  California notwithstanding plaintiff's selection of contrary forum).

20      Delaware has no relevant connection to the present dispute. By contrast, California is the
21  central locus of the parties, the witnesses, and the causes of action. Each of the factors favors the
22  present forum. None favors Delaware. This dispute should be litigated in California.

23      **B.    A Stay or Dismissal Is Similarly Unwarranted.**

24          **1.    The Inquiry Is Identical and the Result the Same.**

25      Whether expressed as a desire for a transfer, stay, or dismissal, the relevant inquiry is
26  precisely the one explored at length supra; namely, which forum is superior to the other. It does
27  not matter whether this issue is raised through motion to transfer ("Should Lawsuit A be heard in
28  Delaware or California?") or a motion to stay or dismiss ("Should Delaware Lawsuit A be heard

1  as opposed to identical California Lawsuit B?"). The same factors apply. See National Patent
2  Dev. Corp. v. American Hosp. Supply Corp., 616 F. Supp. 114, 118-19 (S.D.N.Y. 1984) ("[T]he
3  same factors that are of significance on a *motion to stay* a 'second filed' action come into play on
4  a motion to transfer under section 1404(a)."); Hanasaka v. Global Terminal & Container Svcs.,
5  1992 WL 188365, *2 (S.D.N.Y. 1992) (noting that '[t]he balancing act required of a district court
6  faced with a *motion to dismiss* [based on the] application of the first-filed rule is analogous to the
7  balancing required on a motion to transfer," and both motions are governed by identical factors);
8  Riviera Trading Co. v. Oakley, Inc., 944 F. Supp. 1150, 1158 (S.D.N.Y. 1996) ("The first-filed
9  rule does not supersede the inquiry into the balance of convenience required under § 1404.").

10  Because, as noted supra, these factors favor California – indeed, *overwhelmingly* favor
11  California – over Delaware, the motion to stay or dismiss should be denied for the same reasons
12  as the motion to transfer. Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 56 (S.D.N.Y.
13  2001) ("Weighing the balance of convenience under the first-filed rule involves consideration of
14  the same factors that apply to the determination of whether transfer is appropriate under 28
15  U.S.C. § 1404(a). . . . Because the factors to be evaluated under the balance of convenience test
16  are the same, a single analysis of these factors will, effectively, resolve both issues.").

17  California is the preferable forum. Whether through transfer, dismissal, or a stay, the
18  preferable forum cannot be subordinated to one that each factor identified above demonstrates is
19  inferior. The motion to dismiss or stay must thus be denied for the same reasons as the motion to
20  transfer; namely, because adjudication in Delaware would be inferior to resolution in California.
21  Genentech, Inc. v. Eli Lilly and Co., 998 F.2d 931, 938 (Fed. Cir. 1993) ("[T]he preference for
22  the first filed-suit . . . should yield to the forum in which all interests are best served.").[18]

23

24  ───────────────────
   [18] The second-filed forum – when presented (as here) with a motion to transfer, stay or
25  dismiss – should accordingly deny those motions on the merits if the balance of conveniences
   favors the second-filed suit. JSP International v. Tri-Tech Group, Inc., 1995 WL 413299, *7
26  (S.D.N.Y. 1995) ("Although Tri-Tech contends that this action should be dismissed, stayed or
   transferred pursuant to the 'first-filed' rule, courts have refused to invoke the 'first-filed' rule
27  when a balance of convenience favors the second action.") (holding, on this basis, that second-
28  filed court should deny motion to dismiss, stay or transfer). The court in JSP properly equated
   each such motion, since a stay, dismissal or transfer would each defer resolution to the transferee.

-17-

1           **2.**     **The Forum-Shopping Exception Also Applies.**

2         Second, and independently, Archos' request for a dismissal or stay is unfounded given the

3 longstanding forum-shopping exception to the first-filed rule. "Forum shopping by the plaintiff

4 in the first-filed action is included among the special circumstances that have been held to

5 warrant exception to the first-filed rule." Riviera, 944 F. Supp. at 1158; see also Schwartz, 317

6 F. Supp. 2d at 833 ("Courts refuse to enforce the first to file rule when forum shopping motivated

7 the first-filed action."). As the court noted in Riviera, "[f]orum shopping occurs when a litigant

8 selects a forum with only a slight connection to the factual circumstances of his action, or where

9 forum shopping alone motivated the choice." Riviera, 944 F. Supp. at 1158.

10         Archos' Delaware action is a textbook example of such first-filed forum shopping. Both

11 of the independent definitions of forum shopping articulated in Riviera apply in the present case,

12 either one of which is alone sufficient to compel the denial of Archos' motion to stay or dismiss.

13         The first definition of forum shopping applies because Archos clearly "select[ed] a forum

14 with only a slight connection to the factual circumstances of [the] action." Id. Not only does the

15 selection of Delaware have only a "slight" connection to the cause of action, but it in fact has no

16 such connection at all. The causes of action and events at issue occurred not in Delaware, but in

17 California. See supra at 7-9. Delaware has nothing to do with the factual circumstances of the

18 causes of action; instead, the sole basis for jurisdiction in that forum is the mere fact that DivX

19 was incorporated therein. Delaware thus has – at most – "only a slight connection to the factual

20 circumstances of [the] action." The forum shopping exception to the first-filed rule thus applies.

21         Second, in the circumstances of this case, it is independently clear that "forum shopping

22 alone motivated the choice" of a Delaware forum. Riviera, 944 F. Supp. at 1158. Archos gives

23 this Court no reason why it selected Delaware as a forum rather than California, the home of both

24 of the parties and in which both of the parties have their corporate headquarters, their principal

25 places of business, and virtually all of their employees.

26         Archos has litigated numerous prior cases in California, including, inter alia, a recent 18-

27 month action between Spencer Trask Ventures, Archos, and Archos, S.A. Martin Decl., ¶ 12.

28 There is simply no reason why Archos could not have similarly elected to litigate the present case

1  in the home forum of each of the current parties.  Significantly, when the undersigned asked

2  counsel for Archos why the lawsuit was filed in far-flung Delaware rather than California, the

3  sole response of Archos' counsel was the following: "Because we wanted to."  Martin Decl., ¶

4  13. This is exactly what the forum shopping exception to the first-filed rule is designed to avoid.

5      Archos' selection of Delaware rather than Archos' home state of California is a textbook

6  example of forum shopping.[19]  Unlike California, Delaware has no (or, at best, slight) connection

7  to the events that gave rise to the cause of action.  The forum shopping exception to the first-filed

8  rule thus applies.  For this reason, the motion to stay or dismiss should be denied on the merits.

9              **3.     The Anticipatory Suit and Demand Exceptions Also Apply.**

10     Third, and again independently, Archos' request for a stay or dismissal is unfounded in

11  light of the longstanding anticipatory suit and (related) demand exceptions to the first-filed rule.

12              **(a)     The Anticipatory Suit Exception Applies.**

13     As Archos concedes (at 5:20-6:10), the first-filed rule is inapplicable when that action is

14  anticipatory; i.e., when it was filed "in anticipation of a coercive suit" against the plaintiff by the

15  defendant.  S & S Candies, Inc. v. Hershey Foods Corp., 2000 WL 1425092, *1 (S.D.N.Y. 2000);

16  see also American Reliable Ins. Co. v. Arrington, 269 F. Supp. 2d 758, 760 (S.D. Miss. 2003)

17  (exception to first-filed rule applies "in cases where a plaintiff files suit for declaratory relief in

18  anticipation of a lawsuit to be filed by defendant").

19     There is no doubt that the Delaware action was filed in anticipation of a lawsuit against

20  Archos by DivX.  This dispute began when DivX wrote a cease-and-desist letter to Archos on

21  August 2, 2004, in which it accused Archos of trademark infringement, threatened litigation on

22  this basis, and demanded a "settlement for the known infringement."  Dehaine Decl., ¶ 6.  Archos

23  did not promptly respond to this August 2, 2004 communication; instead, it waited until August

24

25          [19] Given that Archos was represented exclusively by the California office of Coudert
   Brothers in the 18-month Spencer Trask litigation in California, and is also represented by both
26  California and Washington, D.C. counsel in the present action, Archos can hardly claim that it
   had a need to file in Delaware (!) in order to retain able counsel.  Regardless, "convenience of
27  counsel is not a factor."  In Re Volkswagen A.G., 371 F.3d 201, 206 (5rd Cir. 2004); Solomon v.
   Continental Am. Life Ins. Co., 472 F.2d 1043, 1047 (3rd Cir. 1973) (same); Great Am. Ins. Co.
28  v. M/V Werner, 1993 WL 96619, *2 (N.D. Cal. 1993) (same).

-19-

1    29, 2004. When it finally did respond, Archos merely expressed confusion. Dehaine Decl., ¶ 13

2    (noting the brevity and unresponsive nature of Archos' responsive e-mail, which simply asked

3    DivX to "clarify [its] point[s]" and claimed not to understand why Archos was infringing).

4    DivX immediately sent another lengthy letter on August 30, 2004, explaining in detail the

5    various claims and again asserting trademark infringement and demanding a settlement. Dehaine

6    Decl., ¶ 6. When Archos again sent an e-mail in reply that feigned confusion, DivX sent similar

7    cease-and-desist letters to entities that sold Archos' infringing products, including the letter to

8    Buy.com of October 1, 2004. Dehaine Decl., ¶ 13. Thereafter, throughout October 2004, DivX

9    had numerous communications with the various entities who sold Archos' infringing products in

10   response to the October cease-and-desist letters. Dehaine Decl., ¶ 14. These communications

11   were cut short when, on October 29, 2004, without any warning or communication from Archos,

12   DivX was served with the Delaware declaratory judgment action. Dehaine Decl., ¶ 15.

13   There is no doubt as to the anticipatory nature of the Delaware action. DivX has sent two

14   formal cease-and-desist letters to Archos, repeatedly accused it of illegal trademark infringement,

15   and repeatedly demanded a settlement. Moreover, during October 2004, DivX served additional

16   cease-and-desist letters on the downstream sellers of the infringing products, a classic prelude to

17   the filing of a wide-ranging infringement action. There is accordingly no doubt that Archos filed

18   the Delaware action – at the very minimum – under the *threat* of the filing of a lawsuit by DivX.

19   Such an action is, by definition, anticipatory. Employers Reinsurance Corp. v. MSK Ins., Ltd.,

20   2003 WL 21143105, *6 (D. Kan. 2003) (first-filed rule inapplicable when suit was "made under

21   threat of a presumed adversary filing the mirror image of that suit in a different district").

22   The anticipatory nature of the Delaware action is thus evident from the objective facts and

23   circumstances that existed at the time of its filing. But one need not delve deeply into the facts to

24   properly conclude that Archos filed the Delaware action under the threat of a lawsuit by DivX,

25   for Archos has expressly admitted in the Delaware action that its lawsuit was indeed anticipatory.

26   Archos expressly alleges the following in Paragraph 15 of its Complaint in the Delaware action:

27       "As a result of these communications, Archos has formed a reasonable
         apprehension that **institution of a lawsuit by DivX against Archos for**
28       **infringement of DivX's trademark is *imminent*.**"

-20-

1   Archos' express representation in this regard in its Delaware pleading is – word-for-word – the

2   very definition of a classic anticipatory action. See E.E.O.C. v. University of Pennsylvania, 850

3   F.2d 969, 976 (3rd Cir. 1988) (anticipatory suit exception applies when first filing was "made in

4   apparent anticipation of imminent judicial proceedings); Drugstore Direct, Inc. v. Carter Div.,

5   2004 WL 2997512, *2 (E.D. Pa. 2004) (anticipatory suit exception applies "when the first-filing

6   party initiated suit in one forum in anticipation of the opposing party's imminent suit"); Virgin

7   Wireless, Inc. v. Virgin Enterprises, Ltd., 201 F. Supp. 2d 294, 301 (D. Del. 2002) (same).

8        Both the objective facts as well as the doctrine of judicial admission thus prevent Archos

9   from contending that the Delaware action was not filed "in anticipation of a lawsuit to be filed by

10  [DivX]." American Reliable Ins. Co., 269 F. Supp. 2d at 760.  The first-filed rule is accordingly

11  inapplicable, and the motion to stay or dismiss accordingly should be denied.[20]

12       Remarkably, Archos' only response to the anticipatory suit exception is its contention (at

13  10:10-14) that it filed the Delaware action because it "could not wait indefinitely" for Archos to

14  file its own lawsuit (citing the danger of a suits that are "threatened but not pursued").  But this is

15  contrary to its representations in the Delaware complaint, in which it proclaimed that "institution

16  of a lawsuit by DivX against Archos for infringement of DivX's trademark is *imminent*."

17       Archos admits – and the evidence establishes – that it anticipated the imminent filing of a

18  coercive action by DivX.  Because the Delaware action was filed in anticipation of the filing of a

19  coercive suit by DivX, the anticipatory suit exception to the first-filed rule applies.  Accordingly,

20  the motion to dismiss or stay the present action in favor of the first-filed Delaware action must be

21  denied on the merits.  The first-filed rule simply does not apply.[21]

22

23      [20] See Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2nd Cir. 1985)
24  (party cannot contradict its own pleadings).

25      [21] The "Waiting for Godot" defense articulated by Archos would not be a valid
    defense to the anticipatory suit exception even if it were entirely true.  First, the anticipatory suit
26  exception applies even if *months* pass without a suit being filed; here, there were only four weeks
    between DivX's letter of October 1, 2004 and the Delaware filing, and only seven weeks between
27  the last communication directly between the parties in September. Compare Successories, Inc. v.
28  Arnold Palmer Enterprises, 990 F. Supp. 1044, 1046-47 (N.D. Ill. 1998) (holding that first-filed
    (continued...)

1                      **(b)     The Demand Exception Also Applies.**

2              The first-filed rule also does not apply in light of the demand exception, which holds that

3      a party that sends a settlement demand – particularly alongside a cease-and-desist letter – will not

4      be deprived of his choice of forum by the first-filed rule. See Z-Line Designs, Inc. v. Bell'O Int'l

5      LLC, 218 F.R.D. 663, 667 (N.D. Cal. 2003) ("[W]here as here a declaratory judgment action has

6      been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed

7      action to proceed to judgment rather than the first."); Mass v. McClenahan, 1993 WL 267418, *2

8      (S.D.N.Y. 1993) ("[T]he 'first-filed' rule of the Second and Ninth Circuits *does not require a*

9      *stay or transfer*. The recognized exception to this rule holds that, where the first-filed case is a

10     declaratory judgment action precipitated by a demand letter . . . the second-filed action will be

11     permitted to go forward in plaintiff's chosen forum."); S & S Candies, 2000 WL 1425092, *2

12     (same); Houston General Ins. Co., 1989 WL 13473, *2 (first-filed rule inapplicable "when the

13     [first-filed] declaratory judgement action has been triggered by a notice letter").

14             This exception is clearly applicable here given the cease-and-desist letters sent by DivX,

15     to which the Delaware action was – as Archos admits – a response. To apply the first-filed rule

16     in such cases "would thwart settlement negotiations, encouraging intellectual property holders to

17     file suit rather than communicate with an alleged infringer." Z-Line Designs, 218 F.R.D. at 665;

18     see also Riviera, 944 F. Supp. at 1158-59 (same); S & S Candies, 2000 WL 1425092, *2 (same).

19     Archos' motion to stay or dismiss should accordingly be denied on this additional basis as well.

20

21                      [21](...continued)

22     lawsuit was anticipatory notwithstanding three months of pre-filing delay and settlement talks).
               Second, even if a four-week delay would give Archos a reason to file suit, it did not give
23     it a reason to file suit in Delaware rather than California. The whole point of the anticipatory suit
       exception is so the first-filed rule does not result in the injured party losing his right to sue in the
24     forum of his choice. See Houston General Ins. Co. v. Equitable Life Assurance Society, 1989
       WL 13473, *2 (W.D.N.Y. 1989) ("The rationale for deviating from the general rule is that courts
25     are and should be reluctant to conduct the use of the declaratory judgment action as an aspect of
       forum shopping and of preventing the 'injured' party from litigating in the forum of its choice.").
26     Even if delay justifies the filing of a suit, such a suit does not entitle the party to *retain* its chosen
       forum once the suit is indeed at issue. Choice of forum "is not a prize to the winner of a race to
27     the courthouses." Maas v. McClenahan, 1993 WL 267418, *2 (S.D.N.Y. 1993) (quoting Perez v.
28     Ledesma, 401 U.S. 82, 119 (1971)).

                                          - 22 -

1          **4.    Additional Exceptions Also Apply.**

2          Archos' motion to dismiss or stay should be denied for additional reasons as well. First,

3  because the filing of DivX's affirmative claim for trademark infringement obviates the need for

4  the Delaware claim for declaratory relief, the affirmative claim is preferred, and a motion to stay

5  or dismiss such a second-filed action properly denied. Sports Innovations, Inc. v. Specialized

6  Bicycle Components, Inc., 2001 WL 406264, *3 (E.D. La. 2001) ("Numerous cases have held

7  that actions for infringement take precedence over declaratory judgment actions, even where

8  later-filed."); Successories, 990 F. Supp. at 1047 (applying this rule, noting that the "prompt

9  filing of the [second-filed] infringement action in New York obviated the need for the declaratory

10 judgment action"); Seabaord Surety Co. v. Texas City Refining, 109 F. Supp. 468, 470-71 (D.

11 Del. 1952) (applying same rule in infringement case).

12         Second, another exception to the first-filed rule also applies because the present action

13 was filed a mere month and a half after the Delaware suit. Employers Reinsurance, 2003 WL

14 21143105, *6 ("When competing suits are filed within a short time of each other, courts may

15 disregard the first-filed rule.") (denying motion to dismiss or transfer second-filed suit on this

16 basis when second suit was filed eleven weeks after first suit); Riviera, 944 F. Supp. at 1158-59

17 (noting that "[o]ther 'special circumstances' that warrant exceptions to the first filed rule include

18 . . . the minimal difference in time between the filing of the two actions" and applying this rule to

19 deny motion to dismiss second-filed suit). The holdings in Employers Reinsurance and Riviera

20 in this regard are equally applicable here, and is the underlying exception applied in those cases.

21         Finally, the first-filed rule is also inapplicable given the lack of progress in the Delaware

22 action, in which the parties have absolutely done nothing other than (as here) submit their initial

23 pleadings. BP Exploration & Production, Inc. v. Callidus Technologies, 2002 WL 31175217, *2

24 (E.D. La. 2002) ("[A] first-filed declaratory judgment action is entitled to no deference absent

25 substantial progress having occurred in that action.") (citing cases) (refusing to dismiss or stay

26 second-filed suit on this basis); Riviera, 944 F. Supp. at 1158-59 ("Other 'special circumstances'

27 that warrant exceptions to the first filed rule include . . . the lack of progress in either litigation").

28 Archos' motion to dismiss or stay is accordingly properly denied on this additional basis as well.

-23-

1    There are, in short, a plethora of compelling reasons why the present case should not be

2    transferred, dismissed, or stayed, and should instead be litigated in California. Further, one need

3    not lose sight of the forest for the trees. The parties and the dispute are intimately connected with

4    California, whereas they have no relevant connection whatsoever with Delaware. This case is a

5    textbook example of the type of dispute that should be litigated in California notwithstanding the

6    fact that personal jurisdiction also exists in a forum three thousand miles away. Winning the race

7    to the courthouse is not the be-all-end-all of forum selection. Justice is simply not so blind.

8    The present case against Archos and Archos S.A. should be adjudicated in California, and

9    the motion to transfer, stay or dismiss denied on that basis.

10   **III.    SANCTIONS ARE UNWARRANTED.**

11   Sanctions are similarly unwarranted. The Judicial Council cover sheet (JS-44) only calls

12   for the disclosure of related cases previously filed in that district (and does so principally in order

13   to govern initial judge assignment). Martin Decl., ¶ 32. Indeed, all federal districts use the same

14   form JS-44, and several – including the Southern District of New York – expressly make this fact

15   clear. Martin Decl., ¶ 33 (noting that only related cases in that district are disclosed on the JS-

16   44). Parenthetically, Archos asserts (at 8:17-18) that counsel for DivX deliberately typed the

17   word "Judge" in the line for related cases; however, that word is instead a part of the JS-44 itself.

18   Martin Decl., ¶ 34.

19   Local Rule 40.1(e) also requires a Notice of Related Case to be filed promptly, and DivX

20   has indeed filed one contemporaneously with this submission – which was filed prior to the close

21   of the pleadings, the appearance of Archos S.A., or the filing of the Proofs of Service. Local Rule

22   40.1(e) required DivX to describe "the reasons why assignment to a single district judge is or is

23   not likely to effect a saving of judicial effort and other economies" as well as the (fairly complex)

24   relationship between the California and Delaware cases. Given these duties, the undersigned was

25   of the belief that rather than attempt to summarize the contents of this 25-page submission in an

26   earlier-filed Notice of Related Case, it would instead be both more efficient and more helpful to

27   the Court if the Notice of Related Case were to incorporate and be filed alongside the present

28   submission, which explains these issues at length. Martin Decl., ¶ 35.

-24-

1    The undersigned was hardly attempting to hide from anyone the fact that the Delaware

2  action existed; indeed, not only did all counsel in this case already know that fact, but it was also

3  clear to everyone involved that the first motion that would be filed in *both* of these actions would

4  be a well-articulated motion to transfer, dismiss or stay.  Rather than having (irrational) ulterior

5  motions, the thought was simply that a pre-answer filing would be simultaneously "prompt" as

6  well as ensure a complete disclosure in the Notice while avoiding the need to retype in the Notice

7  the same (lengthy) contentions that are raised in the current opposition.  Martin Decl., ¶ 36.

8    Counsel for Archos presumably thought the same thing, since Archos did not file a Notice

9  of Related case either, and instead assumed that its moving papers would adequately explain the

10  two cases.  Moreover Archos – unlike DivX -- still has not filed a Notice of Related Case, even

11  though Local Rule 40.1(e) applies equally to all parties.  Martin Decl., ¶ 37.

12    Regardless, there was no intent by either DivX or Archos to fail to comply with this rule,

13  nor did any harm arise from the simultaneous filing of the Notice and this opposition.  Sanctions

14  against either party are, it is respectfully submitted, unwarranted.

15                                    **Conclusion**

16    Archos has deliberately not moved the Delaware court to enjoin the present action;

17  moreover, the claims against Archos, S.A. are only pending in this forum.  It is accordingly for

18  this Court to determine whether this action should be litigated in California.  The authorities that

19  are cited and discussed supra have consistently held that, in a case like this, a motion to transfer,

20  stay or dismiss should be denied.  The convenience factors strongly favor California; moreover,

21  the forum-shopping, anticipatory suit, demand, and several other exceptions to the first-filed rule

22  apply.  This action should be litigated in the sole forum with a connection to the parties, dispute,

23  and witnesses: California.  The motion to transfer, stay or dismiss should accordingly be denied.

24

25

26  DATED: January 14, 2005          By _____
                                        Shaun P. Martin
27                                      Counsel for Plaintiff

28

1

## PROOF OF SERVICE

2

3     I am a resident of the State of California, over the age of eighteen years, and not a party to this action. My business address is at the University of San Diego School of Law, 5998 Alcala

4     Park, Warren Hall, San Diego, CA 92110.

5     On January 15, 2005, I served the following documents:

6     PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS, TRANSFER OR STAY;

7
      DECLARATION OF SHAUN P. MARTIN IN SUPPORT OF OPPOSITION TO
8     MOTION TO DISMISS, TRANSFER OR STAY;

9     DECLARATION OF LISA DEHAINE IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS, TRANSFER OR STAY; and

10    NOTICE OF RELATED CASE

11
      by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid
12    in the United States mail in San Diego, California, at the University of San Diego School of Law, 5998 Alcala Park, San Diego, California, 92110, and addressed to the following:

13
      Charles F. Reidelbach, Jr., Esq.
14    Higgs, Fletcher & Mack, LLP
      401 West A Street, Suite 2600
15    San Diego, CA 92101

16    Douglas V. Rigler, Esq.
      Young & Thompson
17    745 South 23rd Street
      Arlington, VA 22202

18

19    I am readily familiar with the practice of the University of San Diego School of Law of collecting and processing correspondence for mailing. Under that practice it would be deposited

20    with the United States Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed

21    invalid if the postal cancellation date is more than one day after the date of deposit for mailing.

22    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

23

24    Executed on January 14, 2005, at San Diego, California

25

26

27    _____

28                     Shaun P. Martin