1  SHAUN P. MARTIN, ESQ. (Bar No. 158480)
   University of San Diego School of Law
2  5998 Alcala Park, Warren Hall
   San Diego, CA 92110
3  (619) 260-2347
   FAX: (619) 260-7933
4  smartin@sandiego.edu

5  DAVID J. RICHTER, ESQ. (Bar No. 165694)
   JOHNNY Y. CHEN, ESQ. (Bar No. 198469)
6  DivX Networks, Inc.
   10350 Science Center Drive, Suite 140
7  San Diego, CA 92121
   (858) 909-5300
8  FAX: (858) 909-5301

9  Counsel for Plaintiff

10

11              UNITED STATES DISTRICT COURT FOR THE

12                 SOUTHERN DISTRICT OF CALIFORNIA

13

14  DIVXNETWORKS, INC.,                     )  CASE NO.  04 CV 2386 L (BLM)
                                            )
15               Plaintiff,                 )  DECLARATION OF SHAUN P. MARTIN
                                            )  IN SUPPORT OF OPPOSITION TO
16       v.                                 )  MOTION TO DISMISS, TRANSFER OR
                                            )  STAY
17  ARCHOS, INC. and ARCHOS S.A.,           )
                                            )  Date:  January 31, 2005
18               Defendants.                )  Time:  10:30 a.m.
                                            )  Ctrm:  14
19

20

21

22

23

24

25

26

27

28

DECLARATION OF SHAUN P. MARTIN IN OPPOSITION TO MOTION TO DISMISS - 04cv2386

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

FILED
05 JAN 14 PM 3: 48
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

0 5 -  2 4 0

**Declaration of Shaun P. Martin**

I, Shaun P. Martin, declare as follows:

1.      I am member of the Bar of the State of California and of this Court.  I am counsel of record plaintiff DivXNetworks, Inc. ("DivX") in this action.  I make the following declaration based upon facts that are personally known to me or are supported by reasonable investigation, and if called and sworn as a witness, I could and would testify as to each of them.

2.      My investigation has revealed that Archos is incorporated in and has its principal place of business in California.  Its corporate headquarters and principal place of business is in Irvine, California.

3.      Archos has admitted in the answer that it filed in the Delaware action to the counterclaims filed by DivX that it is incorporated in and has its principal place of business in California.

4.      Archos owns and operates a web site in California in which it sells its infringing products directly to the public, makes actionable false and misleading statements, and commits actionable misuse of the trademarks owned by DivX.  Archos also manufactures, distributes, and directs the dissemination of these false and misleading statements, as well as its other business operations, from its corporate headquarters in Irvine, California.

5.      Archos currently sells infringing products (both directly and through others), has sold infringing products (both directly and through others), and currently makes and distributes actionable false and misleading statements (and misuses trademarks owned by DivX) in the Southern District of California.  Agents and employees of DivX have purchased such products and received such actionable statements (and misuse) in San Diego, California.

6.      Although it is the parent company of Archos, Archos S.A. has not requested a transfer to Delaware.  Rather than request a transfer, Archos S.A. apparently prefers to interpose service-related objections to the present action (potentially alongside other defenses).

-1-

1    7.    The amount of contacts between Archos S.A. and California are massive, and

2    consist of direction, personal visits, daily contact, and extensive interaction with both Archos and

3    other entities inside California.  The nature and extent of such contacts will clearly give rise to

4    jurisdiction and venue in California pursuant to, inter alia, Fed. R. Civ. P. 4(k)(2) and 28 U.S.C.

5    § 1391(d).

6    8.    DivX has filed the present action in its home forum, California.  California is not

7    only the home turf (and principal place of business) of plaintiff DivX, but of defendant Archos as

8    well.

9    9.    Litigation in Delaware requires both parties to retain local counsel in that forum,

10   which multiplies the cost of the litigation, and also requires counsel for both parties – as well as

11   their clients – to travel to that far-flung forum for motions, hearings, settlement conferences, and

12   trial.  The present forum, by contrast, will require local counsel for only one of the parties, and

13   will also reduce the travel costs of repeated cross-country flights by both clients, since both DivX

14   and Archos are within 75 miles of San Diego (whereas they are 3000 miles from Delaware).

15   10.   The latest statistics from the Administrative Office of the United States Courts,

16   which I have reviewed and which are also subject to judicial notice, reveal that the District of

17   Delaware takes nearly twice as long to resolve the median civil lawsuit (11.2 months) than does

18   the Southern District of California (6.5 months), and that the median time to trial in Delaware is

19   also longer.

20   11.   The local interest in resolving a dispute that arose in California between two

21   entities whose corporate headquarters, employees, and principal places of business are all in

22   California is obviously higher in California than in Delaware.  Further, each of the state law

23   claims raised by the parties will be governed by California law, and a California federal court

24   will have substantially more exposure and expertise than would a Delaware judge in these

25   matters.  Archos' Delaware Complaint expressly alleges that the state law tortious interference

26   claims alleged therein arise under California law and California statutes.  The California

27   Complaint similarly alleges California state common law and statutory claims.

28

-2-

1    12.    Based upon my investigation, I am aware that Archos has litigated numerous prior

2  cases in California.  These California lawsuits include, <u>inter alia</u>, a recent 18-month federal

3  action between Spencer Trask Ventures, Archos, and Archos, S.A. in California, and the docket

4  sheet in that action is also subject to judicial notice.  Archos was represented exclusively by the

5  California office of Coudert Brothers in this 18-month federal litigation in California, and is also

6  represented by both California and Washington, D.C. counsel in the present action.

7    13.    At the very outset of this litigation, during a telephone call with Douglas Rigler,

8  counsel for Archos, I asked Mr. Rigler why he chose to file Archos' lawsuit in Delaware rather

9  than in California.  Mr. Rigler's only response was to say, without elaboration: "Because we

10  wanted to."  Martin Decl., ¶ 13.  This is exactly what the forum shopping exception to the first-

11  filed rule is designed to avoid.

12    14.    Employees of DivX will obviously be critical to this litigation, and will provide a

13  vast amount of testimony on behalf of DivX.  I anticipate that these witnesses will testify to all

14  facets of the litigation, including the background and validity of the DivX® trademark, the value

15  of that trademark, the nature and extent of DivX® licensing, the appropriate reasonable royalty

16  rate and the damages resulting from Archos' misconduct, the incompatibility of Archos' products

17  with DivX®, the false and misleading nature of Archos' representations, and the wilful nature of

18  the Archos' infringement in light of the prior relationship between DivX and Archos and the

19  incriminating conversations and statements made by or to Archos employees and/or the third

20  party engineers hired by Archos in its unsuccessful attempt to make Archos' products compatible

21  with DivX®.

22    15.    The DivX employees referred to above – like virtually every DivX employee –

23  both reside and work in the Southern District of California.  None reside in Delaware.

24    16.    It would be a substantial inconvenience to these employees and to DivX if they

25  were forced to travel thousands of miles from their homes and work to attend and/or testify at a

26  trial in Delaware.

27    17.    Employees of Archos will also be critical witnesses in this litigation.  These

28  witnesses will also testify to all facets of the litigation.  DivX will particularly demand the

testimony of these witnesses to establish the use of the DivX® trademark by Archos (and its extent), the content of the representations made by Archos through the use of this trademark, the basis (or lack thereof) upon which Archos made those representations, the actual compatibility or incompatibility of Archos' products with DivX®, the extent (and failure) of Archos' efforts to make its products compatible with DivX®, the number and nature of the many complaints that Archos has fielded from customers about the inability of Archos' products to play DivX® content, the reasonable royalty for utilization of the DivX® trademark, the business and sales benefits that arise to Archos from the use of the DivX® trademark, and the facts surrounding Archos' knowledge that its products were incompatible with DivX® content notwithstanding its contrary representations.

18.    Based upon my investigation, the Archos employees referred to above – like virtually every other Archos employee – both reside and work in California.

19.    None of the Archos employees referred to above reside in Delaware. Indeed, I do not believe that any Archos employee resides in Delaware.

20.    The early stage of this litigation, and the lack of any discovery, precludes a complete list of the many California nonparty witnesses. There are assuredly many of them. Indeed, because California is both the location of all parties and the center of high-technology industry, it is likely that most nonparty witness will reside in California (not Delaware).

21.    A partial list of some of the relevant nonparty witnesses include the individuals described in this and subsequent paragraphs. Charles Cortright. Charles Cortright resides in California, is not currently employed by any party, interfaced directly with Archos (and Archos' non-party engineers at Ingenient) regarding DivX® technology, and is a witness with testimony relevant to infringement (e.g., the falsity of Archos' representations and incompatibility of Archos' products with DivX®) as well as wilfulness (e.g., Archos' knowledge of the false and misleading nature of its statements).

22.    Logan Decker. Logan Decker resides in California, is not currently employed by any of the parties, and is a witness with testimony relevant to the value of the DivX® technology to both consumers and to Archos' products, the misleading and false nature of Archos' utilization

of the DivX® trademark, the falsity of Archos' representations and incompatibility of Archos' products with DivX®, and the burden on and reaction of consumers to both the representations made by Archos and the interaction between Archos' products and DivX® content.

23.    Adam Li. Adam Li resides in California, is not currently employed by any party, and is a witness with testimony relevant to the compatibility of portable devices (including those produced and sold by Archos) with DivX®, the content and benefits of DivX® certification and compatibility with DivX®, and the wilfulness of Archos' infringement (e.g., Archos' knowledge of the false and misleading nature of its statements and use of the DivX® trademark).

24.    David Salvator. David Salvator resides in California, is not currently employed by any of the parties, and is a witness with testimony relevant to the value of the DivX® technology to both consumers and to Archos' products, the content of representation made by Archos regarding the compatibility of its products with DivX®, the false and misleading nature of the utilization of the DivX® trademark by Archos, the incompatibility of Archos' products with DivX®, and the burden on and reaction of consumers to the interaction and incompatibility between Archos' products and DivX® content.

25.    Subba Vuppala. Subba Vuppala resides in California, is not currently employed by any party, and is a witness with testimony relevant to the compatibility of Archos' products with DivX® and the wilfulness of Archos' infringement (e.g., Archos' knowledge of the false and misleading nature of its statements and use of the DivX® trademark).

26.    Shane Winters. Shane Winters resides in California, is not currently employed by any of the parties, and is a witness with testimony relevant to the incompatibility of Archos' products with DivX®, the false and misleading nature of Archos' representations and its use of the DivX® trademark, the extent and contents of complaints made by consumers of Archos products about the incompatibility of those products with DivX®, and the reaction of consumers to the nature of the relationship between Archos' products and DivX.

27.    Robert Yamashita. Robert Yamashita resides in California, is not currently employed by any party, interfaced with Archos (and Archos' non-party engineers at Ingenient) regarding DivX® technology, supervised individuals at DivX who communicated with Archos

1  regarding DivX® technology and Archos' products, and is a witness with testimony relevant to

2  the benefits of DivX® technology and compatibility to consumer product manufacturers

3  (including Archos),  infringement issues (e.g., the falsity of Archos' representations and

4  incompatibility of Archos' products with DivX®), wilfulness (e.g., Archos' knowledge of the

5  false and misleading nature of its statements), and the state law tortious interference claim

6  brought by Archos based upon the alleged interference by DivX of the contractual relationship

7  between Archos and Buy.com (and other sellers of Archos' products).

8      28.    Ben Yen.  Ben Yen resides in California, is not currently employed by any of the

9  parties, worked and communicated with both a large number of Archos' competitors and non-

10  party engineers, and is a witness with testimony relevant to the benefits and value of DivX®

11  technology and compatibility as well as Archos' state law tortious interference claim.

12      29.    Employees of Buy.com.  Archos has brought a state law tortious interference

13  claim based upon the alleged disruption by DixX of Archos' contractual relationship with

14  Buy.com.  Buy.com has its principal place of business and nearly all of its employees, including

15  all of the relevant employees, in Southern California, and none are in Delaware.  These Buy.com

16  witnesses possess relevant information and testimony regarding the existence (or non-existence)

17  of any disruption in the Archos/Buy.com relationship, the extent of this disruption (if any), the

18  reasons for any disruption, the extent of lost sales (if any), the amount of lost profits (if any), the

19  reaction of Buy.com to the communication sent by DivX to Buy.com, and the extent of sales by

20  Buy.com of Archos' products, including but not limited to the "Infringing Products" that are at

21  issue in the Complaint in this action.

22      30.    DivX and I have investigated the above-described individuals in order familiarize

23  ourselves with their expected testimony and their amenability to a subpoena; moreover, DivX

24  and I have communicated with most of them.  None of these witnesses is subject to the subpoena

25  power of a Delaware federal court, whereas each could be compelled to attend trial in the present

26  forum, and none volunteered to produce themselves voluntarily in Delaware.

27      31.    The present action was filed a mere month and a half after the Delaware suit was

28  filed.  DivX would have filed the suit even earlier; however, relatively shortly after the Delaware

1   action was filed, counsel for Mr. Rigler informed me that he was shortly scheduled to travel to
2   southern California, and wanted to know if – while he was there – we could have a meeting to
3   discuss the possible resolution of this matter. Contrary to the insinuations in Archos' moving
4   papers, as well as in Mr. Rigler's declaration, I not only did not invite Mr. Rigler to come to
5   southern California to meet with me in November, but I also expressly told him that I did not
6   believe that it would be worth his coming out unless he was already out here on another matter.
7   Mr. Rigler assured me that he would be out here anyway. This was the only reason I agreed to
8   meet with him. Moreover, although I went into the meeting hoping that we could make some
9   progress, and was prepared to discuss (a) our intention to promptly file a California action, (b)
10  our willingness to defer such an action if we were making progress on any settlement front, and
11  (c) substantive settlement terms, I was extremely disappointed with the content of our meeting,
12  which I found generally perfunctory and unhelpful (and which lasted approximately 15 minutes,
13  notwithstanding the fact that I was prepared to devote several hours to the meeting if necessary).
14  It was only after the tone and substance of this meeting, alongside the utter lack of progress, that
15  we made the final decision to promptly file the present action.

16      32.     Based upon my experience, my investigation, and my ten years as a full-time
17  faculty member at the University of San Diego, I believe that the Judicial Council cover sheet
18  (JS-44) only calls for the disclosure of related cases previously filed in that district, and believe
19  that it does so principally in order to govern initial judge assignment, so that the Clerk is able to
20  low-number to the same judge any incoming cases that are related to an action already pending in
21  that district (rather than employ in the ususal random assignment).

22      33.     All federal districts use basically the same form JS-44 cover sheet, which is
23  prepared and whose contents are dictated by the Judicial Council, and the same type of related
24  case is designed to be disclosed in each. Several districts, including the Southern District of New
25  York, expressly make clear that the line for related cases on the JS-44 civil cover is only for the
26  related cases that are pending in that district, and the line for related cases (and/or the JS-44 form
27  instructions) indicates this precise fact on the form itself. It was on this basis, alongside the facts
28  and beliefs expressed above, that I did not include a non-district case on the JS-44.

1    34.    Archos claims that I deliberately typed the word "Judge" in the line for related

2    cases. Archos is incorrect. That word is instead a part of the JS-44 itself. This fact should be

3    known to anyone who utilizes this form; moreover, it is readily apparent from the form itself, and

4    this typewritten word appears on every JS-44 downloaded from the Southern District's web site.

5    The word is there, I believe, so the Clerk can know – consistent with my belief expressed above –

6    which judge in that district has the related case (and hence can potentially low number it thereto)

7    once the party fills out which "Judge" has the case.

8    35.    My belief was that the contemporaneous filing of this submission and its Notice

9    of Related Case would both satisfy the requirement that the Notice be "promptly" filed and be

10   much more efficient and informative for the Court. I have caused DivX to file a Notice of

11   Related Case contemporaneously with this submission, and it has accordingly been filed early in

12   the proceedings, prior to the close of the pleadings, the appearance of Archos S.A., or the filing

13   of the Proofs of Service. Local Rule 40.1(e) required DivX to describe "the reasons why

14   assignment to a single district judge is or is not likely to effect a saving of judicial effort and

15   other economies" as well as the (fairly complex) relationship between the California and

16   Delaware cases. Given these duties, I was of the belief that rather than attempt to summarize the

17   contents of this 25-page submission in an earlier-filed Notice of Related Case, it would instead

18   be both more efficient and more helpful to the Court if the Notice of Related Case were to

19   incorporate and be filed alongside the present submission, which explains these issues at length.

20   36.    I have never attempted to hide from anyone the fact that the Delaware action

21   existed. Not only did I recognize that all counsel in this case already know about the existence of

22   this case, but I believed (and continue to believe) that when DivX filed the present action, it was

23   – and certainly should have been – crystal clear to everyone involved that the first motion that

24   would be filed in both of these actions would be a well-articulated motion to transfer, dismiss or

25   stay. I believed that a pre-answer filing of a Notice of Related Case by DivX would be prompt as

26   well as well as ensure a complete disclosure in the Notice, while simultaneously avoiding the

27   need to retype in the Notice of the same (lengthy) contentions that are raised in the opposition

28   filed herewith.

1        37.    I believe that counsel for Archos presumably thought essentially the same thing as

2    I did, since Archos did not file a Notice of Related case either, and instead appears to have both

3    assumed and *continues* to assume that its moving papers would and do adequately substitute for a

4    Motion of Related Case.  Moreover Archos – unlike DivX – still has not filed a Notice of Related

5    Case, even though Local Rule 40.1(e) applies equally to all parties.

6        38.    There was never any intent by either me or any other counsel for or employee of

7    DivX to fail to comply with Local Rule 40.1(e).

8

9        I declare under penalty of perjury under the laws of the United States of America that the

10   foregoing is true and correct.

11

12       Executed this 14th day of January, 2005, in San Diego, California.

13

14                                     Shaun P. Martin

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-9-